IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

PHARMACY BUYING ASSOC., INC. d/b/a PBA
HEALTH and TEXAS TRUECARE, et al.,
        Plaintiffs

-vs-                                           Case No.  A-12-CA-156-SS

KATHLEEN SEBELIUS, Secretary, United States
Department Of Health and Human Services and
KYLE L. JANEK, M.D., Executive Commissioner,
Texas Health and Human Services Commission,
                Defendants.

_____

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendant Kyle L. Janek's[1] Motion to Dismiss Plaintiffs' First Amended Original

Complaint [#29],[2] Plaintiffs' Corrected Response [#40], and Janek's Reply [#45]. Having reviewed

the documents, the relevant law, and the file as a whole, the Court now enters the following opinion

and orders GRANTING the motion to dismiss.[3]

## Background

Plaintiffs Pharmacy Buying Association, Inc. d/b/a Texas TrueCare and PBA Health

---

[1] Thomas Suehs, the former Executive Commissioner of the Texas Health and Human Services Commission, was originally named as a defendant in this case. Kyle Janek has since been substituted for Suehs. Order of Sept. 21, 2012 [#65]. In this order, references to Suehs have been replaced with references to Janek.

[2] Also pending are Janek's Second Motion to Dismiss [#14] and Janek's Corrected Second Motion to Dismiss [#15]. As Janek points out in his latest motion to dismiss, these two motions were effectively mooted by the filing of Plaintiffs' Amended Complaint [#11] on the same day. They are thus properly DISMISSED AS MOOT.

[3] Because the Court grants Janek's motion to dismiss, Plaintiffs' Motion for Summary Judgment or, in the Alternative, for Preliminary Injunction [#51], which addresses only Plaintiffs' claims against Janek, is also properly DISMISSED AS MOOT. Similarly, the pending request to file an amicus brief in support of Plaintiffs' summary judgment motion [#53] is also DISMISSED AS MOOT.

(TrueCare), Santos O. Gonzalez, DeLeon's Pharmacy, Inc., Clinic Pharmacy, LLC (Clinic), Robert L. Tyson, Jane Does 1–4 and John Does 1–4 bring this action against Kathleen Sebelius, Secretary of the United States Department of Health and Human Services (HHS) and Kyle L. Janek, M.D., Executive Commissioner of the Texas Health and Human Services Commission (HHSC). TrueCare is a membership-based organization of independent pharmacies located in part in Texas. Gonzalez and Tyson are pharmacists operating independent pharmacies in Texas. DeLeon's and Clinic are independent pharmacies operating in Texas. Jane and John Does are Medicaid recipients, or next friends to minor children recipients. Am. Compl. ¶¶ 1–10.

The Supreme Court recently summarized the basic structure of the Medicaid program:

> Medicaid is a cooperative federal-state program that provides medical care to needy individuals. To qualify for federal funds, States must submit to a federal agency ([the Centers for Medicare & Medicaid Services, or CMS], a division of the Department of Health and Human Services) a state Medicaid plan that details the nature and scope of the State's Medicaid program. It must also submit any amendments to the plan that it may make from time to time. And it must receive the agency's approval of the plan and any amendments. Before granting approval, the agency reviews the State's plan and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program. And the agency's director has specified that the agency will not provide federal funds for any state plan amendment until the agency approves the amendment.

*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204, 1208 (2012) (internal citations omitted). As in *Douglas*, the relevant statutory provision here provides a State's Medicaid plan and amendments must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A) (Section 30(A)).

Specifically at issue in this action are the Medicaid plan and amendments in place in Texas. According to Plaintiffs, prior to March 1, 2012, Texas's Medicaid outpatient drug benefit was primarily provided through HHSC's Vendor Drug Program and in accordance with the reimbursement methodology set forth in the Texas Administrative Code and approved by CMS. However, in 2011 the Texas Legislature directed adoption of a managed care model in legislation referred to as "Senate Bill 7." Tex. S.B. 7, 82d Leg., 1st C.S. (2011). As of March 1, 2012, HHSC instituted new regulations, referred to here as the Demonstration Project, requiring virtually all Medicaid recipients in Texas to enroll in the STAR or STAR+PLUS Medicaid managed care programs and to obtain their prescriptions from pharmacies within those programs. Am. Compl. ¶ 39.

Unlike in a traditional fee-for-service model, under a managed care program, the managed care organizations (MCOs) enter into comprehensive risk contracts with a state. *See* 42 U.S.C. § 1396b(m) (defining MCOs); 42 C.F.R. § 428.1(a) (rules regarding MCOs and contracts with a state). Under a risk contract, the MCO is paid a "capitation payment,"[4] and in return assumes risk for the costs of the services covered under the contract and incurs loss when the cost of furnishing the services exceeds the payments under the contract. 42 C.F.R. § 438.2 (defining risk contract). The "capitation payment" is required by law to be "actuarially sound." 42 U.S.C. § 1396b(m)(2)(A)(xiii)(II) (capitation rates paid to MCO subject to regulations requiring actuarially sound rates); 42 C.F.R. § 438.6(c)(2)(i) ("All payments under risk contracts and all risk-sharing

---

[4] "Capitation payment" is defined under federal regulations as "a payment the State agency makes periodically to a contractor on behalf of each recipient enrolled under a contract for the provision of medical services under the State plan." 42 C.F.R. § 438.2.

mechanisms in contracts must be actuarially sound."). However, both CMS and HHSC have disavowed any obligation to regulate payment rates between MCOs or their subcontracted Pharmacy Benefit Managers (PBMs) and network providers. *See* 67 Fed. Reg. 40998, 41019 (June 14, 2002) ("Except in the case of payments to [Federal Qualified Health Centers] . . . we do not regulate the payment rates between MCOs and subcontracting providers" and, as to subcontracts between MCOs and their subcontracting providers, "CMS does not review these subcontracts."); 36 Tex. Reg. 8667 (Dec. 23, 2011) (federal regulations "have been interpreted to generally prohibit the state from mandating payment of specific provider rates by managed care organizations").

Both Plaintiffs and Janek agree Texas submitted to CMS, and obtained approval for, the Demonstration Project managed care model as a "section 1115 Demonstration." Compl. [#1], Ex. 1, at 1;[5] *see also* 42 U.S.C. § 1315(a)(1) (authorizing waiver of state plan requirements for experimental, pilot or demonstration projects). Specifically, Janek obtained four waivers from CMS, "to conduct a phased transition of Medicaid beneficiaries from fee-for-service to managed care delivery system." Compl. [#1] Ex. 1, at 5. The waivers clearly state, however, "[a]ll requirements of the Medicaid program expressed in law, regulation, and policy statements, not expressly waived in this list, shall apply to the Demonstration project." *Id.* Although 42 U.S.C. §§ 1396a(a)(1), 1396a(a)(10)(B), 1396a(a)(23)(A) and 1396a(a)(5) were waived, provisions requiring medical assistance be made available, furnished with reasonable promptness, and obtained from any qualified community pharmacy, as well as Section 30(A), were not waived. Compl. [#1], Ex. 1, at 5-6; *see also* 42 U.S.C. §§ 1396a(a)(8) (medical "assistance shall be furnished with reasonable promptness

---

[5] In their amended complaint, Plaintiffs incorporate by reference the exhibits attached to their original complaint.

to all eligible individuals"); 1396a(a)(10)(A)–(C) ("making medical assistance available"); 1396a(a)(23)(A) ("any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required").[6] Section 1396a(a)(4)(D)—requiring each entity "responsible for selecting, awarding, or otherwise obtaining items and services under the State plan" be subject to safeguards against conflicts of interest—was also not waived.

Approval of the Demonstration Project was also subject to certain Special Terms and Conditions (STCs). In pertinent part, the STCs require:

> 22. **Readiness Review Requirements for STAR and STAR+PLUS Expansions**. The state will submit to CMS, documentation regarding network adequacy and capacity for the STAR and STAR+PLUS Expansions, as described below:
>
> a. the Readiness Review for the STAR and STAR+PLUS Expansions will consist of the following elements:
>> i.      Review and approval of managed care contract amendments; and
>> ii.     Review of the State plans for monitoring, overseeing, and ensuring compliance with MCO contract requirements, including network adequacy.
>
> b. Prior to the State's planned implementation date for STAR and STAR+PLUS expansions, the state must submit the following to CMS review, according to the timelines specified below: . . .
>
>> v. Demonstration of network adequacy according to the list of deliverables provided in paragraph 24(e) (December 23, 2011); and
>> vi. Proposed managed care contracts or contract amendments, as needed, to implement the STAR and STAR+PLUS Expansions (December 23, 2011)
> . . . .
>
> d. The State must postpone the March 2012 implementation of STAR and STAR+PLUS Expansions (in whole or in part) if requested to do so by CMS. . . .
>
> 24. **Network Requirements**. The State must, through contract with MCOs, ensure

---

[6] Sections 1396a(a)(10)(B) and 1396a(a)(23)(A) were waived only "[t]o the extent necessary." Compl. [#1], Ex. 1, at 5.

> the delivery of all covered benefits, including high quality care. Services must be delivered in a culturally competent manner, and the MCO network must be sufficient to provide access to covered services to the low-income population.

Compl. [#1], Ex. 1, at 12–14. The STCs further require Texas to "provide adequate assurances that it has sufficient capacity to serve the expected enrollment in its service area," specifically in the form of "supporting documentation that must show that the MCO offers an adequate range of preventive, primary, pharmacy, and specialty service care for the anticipated number of enrollees in the service area." *Id*. at 15.

Plaintiffs allege Defendants have not met the requirements of both the Medicaid program and the STCs as they have not ensured that a sufficient pharmacy provider network is in place. According to Plaintiffs, at least one PBM also owns and operates a large chain pharmacy. Am. Compl. [#11] ¶¶ 1, 66. Plaintiffs allege:

> the MCOs and their PBMs, in asserting that an adequate network was in place, relied on contract provisions that purport to require that independent pharmacies agree to any contract amendments the PBMs unilaterally dictate. The Defendants knew or should have known that the PBMs would act in their own self-interest to force the independent pharmacies to accept unreasonable reimbursement, resulting in the closure of independent pharmacies, in a reduction in the number of independent pharmacies willing to accept Medicaid patients, and in a reduction in pharmacies stocking expensive drugs for which unreasonable reimbursement is paid, all of which result in serious gaps in access.

*Id.* ¶ 41. Plaintiffs further allege, as a result, a number of independent pharmacies, including one owned by Gonzalez, have closed. *Id.* ¶ 42.

According to Plaintiffs, the PBMs have not implemented the changes under the Demonstration Project through contract addendums, as is usual for implementation of a new program or service. They further allege any addendums agreed to were not agreed to voluntarily, and further do not include the terms of reimbursement for dispensing of prescription medications. *Id.* ¶¶ 43–45.

In addition. the STCs require CMS to approve all contracts. Compl. [#1], Ex. 1, at 14. Further, according to Plaintiffs, under the Uniform Managed Care Contract,[7] MCOs are required to comply with Chapters 32 and 36 of the Texas Human Resources Code. Contained in those sections are the reimbursement rates of the Vendor Drug Program. According to Plaintiffs, Defendants have recklessly disregarded these provisions in overseeing the implementation of the Demonstration Project, ultimately leading to a violation of Section 30(A). Am. Compl. [#11] ¶¶ 53–57.

Plaintiffs allege, under the Demonstration Project, Texas pharmacies dispensing prescription medication to Medicaid recipients have been denied the reimbursement rates established in the Vendor Drug Program. Plaintiffs further allege the rates currently paid are significantly lower, and in some cases are below the costs of acquiring the medication dispensed. *Id*. ¶¶ 58–63. Plaintiffs allege the reduced reimbursement rate is contrary to federal regulations governing calculation of such reimbursement rates and is contrary to language enacted by the Texas Senate requiring contracts with MCOs to include "reasonable administrative and professional terms and conditions of the contract." *Id*. ¶¶ 64–66 (quoting Tex. Gov't Code § 533.005(a)(23)(H), *as amended by* Tex. S.B. 7, 82d Leg., 1st C.S. (2011)).

Plaintiffs additionally claim reimbursement rates for a variety of other services and goods provided by independent pharmacies violate the reasonableness requirement imposed by law. For example, Plaintiffs allege the reimbursement rates and procedures applying to the provision of durable medical equipment are unspecified, PBMs have retained the right to unilaterally amend contracts with pharmacies, PBMs have retained the right to recoup overpayments indefinitely, and

---

[7] Plaintiffs cite to "Exhibit P-11" when discussing this contract. Plaintiffs' complaint, however, only has ten labeled exhibits.

at least one PBM has required all network pharmacies to offer twenty-four hour access. *Id*. ¶¶ 64–67. According to Plaintiffs, the inevitable result will be irreparable injury in the form of closure of independent pharmacies, which will leave Medicaid recipients without pharmacies located near them or offering delivery services for those without transportation, or will leave pharmacies unwilling to compound specific drugs or provide durable medical equipment and related training. *Id*. ¶¶ 68–73.

Plaintiffs first assert a cause of action under the federal Administrative Procedure Act (APA) against Sebelius, alleging she acted arbitrarily and capriciously in approving the Demonstration Project. *Id*. ¶ 74. Second, Plaintiffs seek relief under 42 U.S.C. § 1983 against Janek for deprivations of their constitutional rights to due process and equal protection under both the United States and Texas Constitutions, as well as their rights under Section 30(A). *Id*. ¶¶ 7–77. Plaintiffs further assert a cause of action under the Supremacy Clause, arguing Janek has ignored the mandatory terms of the Medicaid Act in failing to act, because: (1) HHSC exercised its authority to expand managed care purely for budgetary reasons; (2) HHSC did not consider the factors of Section 30(A) "prior to authorizing the MCOs and PBMs to implement the expansion" of managed care; (3) HHSC and Janek ignored studies they conducted regarding estimated costs of providing pharmacy services; (4) the reimbursement rates under the Development Project are not reasonably related to provider costs and thus violate Section 30(A); and (5) Defendants did not modify the Vendor Drug Program and the rates therein, and therefore those rates must be applied. *Id*. ¶ 78. Plaintiffs also assert a cause of action against Janek for violating their rights to due process and equal protection under the Texas Constitution. *Id*. ¶¶ 79–80. Plaintiffs finally assert causes of action for a writ of mandamus and declaratory relief compelling Janek to comply with Section 30(A), and with the state law governing

Medicaid requiring reasonable terms be offered to providers, as well as declaring the Development

Project invalid, unlawful and preempted by federal law. *Id.* ¶¶ 81–99.

Janek moves to dismiss. Janek contends Plaintiffs' claims against him should be dismissed

because: (1) Plaintiffs lack standing; (2) Janek is immune from Plaintiffs' claims under the Texas

Constitution and for writ of mandamus; and (3) Plaintiffs have failed to state a claim upon which

relied may be granted.

### Analysis

### I.      **Legal Standards**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A

federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and

laws of the United States. U.S. CONST. art. III §§ 1–2; *Kokkonen*, 511 U.S. at 377. The party seeking

relief bears the burden of establishing subject matter jurisdiction. *United States v. Hays*, 515 U.S.

737, 743 (1995); *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362

F.3d 333, 336 (5th Cir. 2004).

A party may move for dismissal of a case for lack of subject matter jurisdiction. FED. R. CIV.

P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction must be considered before

any other challenge. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The

requirement that jurisdiction be established as a threshold matter . . . is inflexible and without

exception."); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). On a Rule

12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of

its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Application

Janek moves to dismiss Plaintiffs' claims against him on three bases. Janek contends Plaintiffs lack standing, their claims under the Texas Constitution and for writ of mandamus are barred by his Eleventh Amendment immunity, and they have failed to state a claim for relief.

## A.    Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This requirement, like other jurisdictional requirements, is not subject to waiver and demands strict compliance. *Raines*, 521 U.S. at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). To meet the standing requirement, a plaintiff must show (1) they have suffered an "injury in fact," which is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

11

Janek contends all of the named plaintiffs in this action lack standing to assert their claims against him. Plaintiffs in this action fall into three categories: Medicaid recipients, Medicaid provider pharmacies and pharmacists, and an association of pharmacies. The Court will address each category in turn.

### i.    Medicaid Recipients

Plaintiffs' complaint asserts claims on behalf of Jane and John Doe Medicaid recipients, alleging their "access to Medicaid pharmacy benefits will be drastically impaired by the defendants' omissions in this case." Am. Compl. [#11] ¶¶ 7–8. Janek contends the Doe Plaintiffs lack standing because the complaint fails to allege any injury actually suffered by a Medicaid recipient as a result of the changes to pharmacy reimbursement rates under the Development Project.

As Janek points out, in the portion of Plaintiffs' complaint entitled "Irreparable Injury," Plaintiffs have failed to cite a single example of a Medicaid recipient whose access to pharmacy services has been affected by the changes wrought under the Development Project. The only specific reference to injury by a Doe Plaintiff is the allegation "minor child Plaintiff John Doe 1 has a rare condition for which his current pharmacy, an independent pharmacy, compounds drugs. Without that pharmacy, he will suffer." *Id*. ¶ 70. Otherwise, Plaintiffs have alleged individuals receiving Medicaid generally have transportation issues and need training in the use of durable medical equipment, issues which only independent pharmacies have historically addressed. *Id*. ¶¶ 70–73.

Plaintiffs contend the injury need not already have occurred in order to demonstrate standing.[8] Rather, they contend the United States Supreme Court has recognized even *threatened*

---

[8] Plaintiffs also argue Medicaid recipients are in the "zone of interest" Congress intended to protect in enacting Medicaid. Plaintiffs' argument is inapposite here as the "zone of interest" inquiry speaks only to prudential standing, whereas Janek challenges Plaintiffs' constitutional standing under Article III. *See Elk Grove Unified Sch. Dist. v.*

injury can support standing. To be sure, standing *can* be based on either actual or imminent harm. *See Friends of the Earth*, 528 U.S. 167, 183–84 (2000) (distinguishing *Lujan*, and finding standing based on plaintiffs' assertions they would use a river but for defendant's pollution); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[O]ne does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough."); *Lujan*, 504 U.S. at 564 n.2 (for purposes of standing, "imminence" is an "elastic concept"). But, as the Fifth Circuit recently reiterated, a plaintiff may seek injunctive relief with respect to threatened harm only if he "shows a sufficiently high degree of likelihood" he will be injured. *Frame v. City of Arlington*, 657 F.3d 215, 235 (5th Cir. 2011).

Here, the Doe Plaintiffs have not made such a showing. They have alleged independent pharmacies will cease operating, and indeed have provided examples of pharmacies which have gone out of business. But they have not identified a single example of a Medicaid recipient who has been injured as a result. Even if Plaintiffs are correct in their assumption and additional pharmacies close their doors, any harm to individual Medicaid recipients is far from clear based on the pleadings in this case. The Doe Plaintiffs' allegations thus fall into the conjectural or hypothetical range at this point.

The cases cited by Plaintiffs are not to the contrary. In *Monsanto Co. v. Geertson Seed Farms*, the United States Supreme Court found organic farmers had standing to challenge the deregulation of genetically modified seed, based on the fact the farmers had "established a 'reasonable probability' that their organic and conventional alfalfa crops will be infected with the

---

*Newdow*, 542 U.S. 1, 11–12 (2004) (describing the constitutional and prudential strands of standing jurisprudence); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (distinguishing standards for dismissal for lack of constitutional standing and dismissal for lack of prudential standing).

engineered gene," and further, even if their crops were not contaminated, they would be required to test their crops to establish non-contamination. 130 S. Ct. 2743, 2755 (2010). In other words, harm was certain and inevitable. Plaintiffs here have not alleged facts sufficient to show a reasonable probability of harm, but have simply made bald assertions of future anticipated harm. Nor are the other two cases cited by Plaintiffs helpful to their claims, as each of those cases also rested on a factual showing beyond mere speculation. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (finding petitioner had alleged threats of prosecution beyond the "imaginary or speculative," as he had been twice warned to stop distributing handbills, an act he claimed was constitutionally protected, and had been told by police that if he again distributed handbills and disobeyed a warning to stop he would likely be prosecuted); *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977) (petitioners had standing to challenge regulation where regulation was directed at them in particular; required them to make significant changes in their everyday business practices; and exposed them to imposition of sanctions for failure to comply). Accordingly, the Court concludes the claims asserted by the Doe Plaintiffs against Janek should be dismissed for lack of standing.

### ii.    Medicaid Providers

Janek next argues the pharmacy and pharmacist plaintiffs (Provider Plaintiffs) also lack standing as they have not established injury-in-fact. Initially, Janek maintains nothing in the Medicaid Act creates a right for pharmacies to provide Medicaid services. Thus, Janek contends impairment of a particular pharmacy's ability to continue to participate in a Medicaid program is not a legal injury. Janek further argues only Gonzalez, the owner of Fred's Pharmacy, has alleged a concrete injury by stating one of his pharmacy locations has closed. According to Janek, even this

allegation is insufficient as it is simply a conclusory assertion the pharmacy closure was the result of insufficient Medicaid reimbursement. Finally, Janek asserts Plaintiffs have failed to show the alleged inadequacies in the provisions of their contracts with PBMs are fairly traceable to any act on the part of Janek.

As an initial matter, the Provider Plaintiffs correctly point out Janek has implicitly conceded Gonzalez has alleged a specific injury, the closure of his pharmacy, which purportedly is the result of the implementation of the Development Project. At a minimum, this allegation of injury is sufficient to afford Gonzalez standing to sue.[9] Plaintiffs have also provided affidavits concerning the adverse impact of the Development Project on two additional pharmacies. Pl.'s Corr. Resp. [#40], Exs. P-12, P-13. These additional affidavits further bolster the showing of injury by the Provider Plaintiffs.

The Provider Plaintiffs also argue Janek's contention their participation in the Medicaid program is voluntary, thereby implying they have caused their own injury, is mistaken. According to Plaintiffs, contracts between PBMs and pharmacies contain provisions requiring pharmacies to accept unilaterally imposed new programs. They further assert failure to comply with provisions governing their Medicaid contracts jeopardizes their participation in other state programs, such as Medicare. In addition, Plaintiffs state licensed pharmacists are obligated to transfer their patient files to another provider, not simply abandon the patient. The Court finds these contentions assert a sufficient injury to establish standing.

---

[9] Whether Gonzalez can eventually carry his burden to establish the closure of one of his pharmacies was actually caused by the Development Project is a different question. However, that is a matter for summary judgment or trial, not a matter appropriate for consideration in a motion to dismiss.

Moreover, Janek's characterization of the Provider Plaintiffs' injury misses a salient point of Plaintiffs' complaint. There is no dispute the Provider Plaintiffs are being reimbursed for dispensing prescription medication at a rate lower than that in the Vendor Drug Program. Moreover, Plaintiffs are clearly challenging Janek's failure to comply with laws and regulations requiring reimbursement at the rates set forth in Texas law. This type of economic injury has been recognized as a sufficient basis for standing to challenge laws regulating payments for medical care. *See Singleton v. Wulff*, 428 U.S. 106, 112–13 (1976) (physicians performing abortions for which payment under Medicaid was refused suffered concrete injury); *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 699 (5th Cir. 2011) (hospice care provider "undisputedly established standing by demonstrating that it has suffered an actual and concrete financial injury" due to the use of challenged regulation governing payment calculation); *Westside Mothers v. Haveman*, 289 F.3d 852, 864 (6th Cir. 2002) (physicians' professional organizations challenging Medicaid provision established injury based on not receiving compensation for medical services members were providing). The decision of the Provider Plaintiffs to sell prescription medications is not the cause of their injury. Rather, it is the decision of HHSC to reimburse those pharmacies at rates lower than the Vendor Drug Plan which has injured them.

The Provider Plaintiffs also, rather conclusorily, allege they have standing to assert claims on behalf of their patients. The United States Supreme Court has "adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The rule is not absolute, however. The United States

Supreme Court has recognized a limited exception when: (1) the litigant seeking third-party standing has suffered an "injury in fact" giving him a "sufficiently concrete interest" in the outcome of the issue; (2) the litigant has a "close" relationship with the third party on whose behalf the right is asserted; and (3) there is a "hindrance" to the third party's ability to protect his own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Courts generally "have not looked favorably upon third-party standing." *Kowalski*, 543 U.S. at 130 (denying third-party standing to attorney seeking to litigate right of client); *Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999) (same); *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988) (alumni, football players, and cheerleaders lacked third-party standing to assert claims of university).

The Provider Plaintiffs in this case have wholly failed to show their patients, Medicaid recipients, are faced with any hindrance to the presentation of their own interests. Something more than a hypothetical hindrance is required. *See Miller v. Albright*, 523 U.S. 420, 448 (1998) (noting petitioner had not shown "substantial hindrance" or "genuine obstacle" to third party's ability to assert own claim). A claim of hindrance is rebutted in this case, as in others, by the participation of Medicaid recipients as plaintiffs. *See Equal Access for El Paso, Inc. v. Hawkins*, 428 F. Supp. 2d 585, 605–06 (W.D. Tex. 2006), *rev'd on other grounds*, 509 F.3d 697 (5th Cir. 2007) (conclusory assertion of decreased information, as well as bare assertion of a lack of resources, insufficient to establish third-party standing, noting plaintiffs also included Medicaid recipients); *see also Douglas*, 132 S. Ct. at 1207 (consolidated Supremacy Clause actions brought by Medicaid providers and recipients). Accordingly, the Provider Plaintiffs have not established a sufficient basis for third-party standing to assert claims on behalf of Medicaid recipients. However, as the Provider Plaintiffs have established standing to sue on their own behalf, Defendant Janek is not entitled to dismissal of their

claims against him on this basis.[10]

### iii.   Pharmacy Association

Janek also moves to dismiss the claims of TrueCare for lack of standing. TrueCare asserts it has standing on behalf of its members, on behalf of its members' patients, and on behalf of itself. Am. Compl. [#11] ¶¶ 20–22.

The second and third of Plaintiffs' contentions concerning TrueCare's standing are unavailing. The Court has already concluded the Provider Plaintiffs lack third-party standing to raise the claims of their patients. TrueCare's assertion of third-party standing is even more attenuated, and also fails for the same reasons. TrueCare's assertion of standing on behalf of itself rests on its contention the PBMs in Texas "have refused to negotiate on a majority of the fundamental and most economically critical provisions," as the PBMs "hav[e] no incentive to do so" due to the abdication of responsibility by state and federal officials. Pl.'s Corr. Resp. [#40] at 8. Although TrueCare claims this refusal to negotiate has caused it injury, it has wholly failed to explain the nature of this alleged injury. Thus, TrueCare has failed to establish standing to bring claims on its own behalf.

With regard to associational standing, "[t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," but "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth*, 422 U.S. at 511. Associational standing is found when: (1) the association's members have standing to sue in their

---

[10] The Court finds telling, although clearly not dispositive, the Supreme Court's failure to mention any issue regarding the standing of the provider plaintiffs in *Douglas*, as the Supreme Court has made clear it is "obliged to examine standing *sua sponte* where standing has erroneously been assumed below." *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001).

own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550–51 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

Janek argues TrueCare's claim of associational standing fails on the third element.[11] Janek contends the participation of individual members in this lawsuit is required and thus TrueCare lacks associational standing. In support of this contention, Janek relies on the Tenth Circuit's decision examining the standing of a medical services provider association seeking a preliminary injunction against Kansas's planned Medicaid reimbursement rate freeze. *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018 (10th Cir. 1992). The Tenth Circuit found no associational standing, holding a determination of the adequacy of the rates would "necessarily require individual participation of the associations' members," as evaluation of the state's compliance with federally prescribed procedures in arriving at the rates would require a detailed economic examination of individual providers. *Id*. at 1022–23.

As Plaintiffs point out, the Fifth Circuit has addressed, and significantly distinguished, the Tenth Circuit's associational standing analysis in *Kansas Health Care*. *See Ass'n of Am. Physicians*, 627 F.3d at 552–53 (concluding individual participation not necessary in suit for declaratory and injunctive relief for alleged constitutional violations including medical board's use of anonymous complaints and retaliatory actions against physicians). In so doing, the Fifth Circuit made clear the distinction rested on whether the claims in a particular case required minimal factual development,

---

[11] The first two elements are easily satisfied. First, as the Court has already held in this case, individual Medicaid providers have standing to sue. Second, the issues in this case are deeply related to the daily operation of the pharmacies, and therefore germane to TrueCare's purpose.

such as allegations of administrative illegality, or were of a more fact-sensitive nature. *Id*. at 552. The Fifth Circuit agreed with the Third and Seventh Circuits, holding "as long as resolution of the claims benefits the association's members and the claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry, the participation of those individual members will not thwart associational standing." *Id*.

In this case, Plaintiffs are not contending each individual pharmacy is entitled to a specific determination of its appropriate reimbursement rate. Rather, Plaintiffs are alleging claims based on lack of administrative oversight and violations of various statutes. Janek has not established Plaintiffs' claims require the type of individualized evidentiary consideration as those at issue in the *Kansas Health Care* case.[12] Accordingly, TrueCare does not lack standing to assert claims on behalf of its members.

**B.      Eleventh Amendment Immunity**

Janek next contends Plaintiffs' claims against him under the Texas Constitution and seeking a writ of mandamus should be dismissed because the claims are barred by the Eleventh Amendment. The Eleventh Amendment generally divests federal courts of jurisdiction over suits against a state. *Green v. State Bar,* 27 F.3d 1083, 1087 (5th Cir. 1994) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). Thus, the Eleventh Amendment bars suits in federal court by citizens against their own states. U.S. CONST. amend. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Cox v. City of Dallas*, 256 F.3d 281, 307 (5th Cir. 2001) (citing *Bd. of Trs. v. Garrett,* 531

---

[12] In explaining the prudential nature of the third prong of *Hunt*'s associational standing test, the United States Supreme Court emphasized this element "is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996). Because Plaintiffs are not seeking monetary damages in this case, concerns of administrative convenience and efficiency are minimal. *See id.* at 556–57.

U.S. 356 (2001)). A suit against a state agency is an indirect suit against the state and, therefore, also

barred. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Briggs v. Mississippi*,

503 (5th Cir. 2003) (Eleventh Amendment bars suit against state or "state entity").

State agencies and officials are generally not protected in their official capacities from suits

for injunctive relief. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908); *Reickenbacker v. Foster*, 274

F.3d 974, 976 (5th Cir. 2001). The *Ex parte Young* exception "has been accepted as necessary to

permit the federal courts to vindicate *federal* rights and hold state officials responsible to 'the

supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (emphasis added). Thus, the

United States Supreme Court has made clear the Eleventh Amendment permits suits for prospective

injunctive relief against state officials acting in violation of federal law. *Frew v. Hawkins*, 540 U.S.

431, 437 (2004); *see also AT&T Commc'ns v. BellSouth Telecomm. Inc.*, 238 F.3d 636, 643 (5th Cir.

2001) (federal suits may proceed against state officials for prospective injunctive relief to end

continuing violations of federal law).

Janek is not, however, asserting Eleventh Amendment immunity from Plaintiffs' federal law

claims. Rather, he seeks dismissal of their claims asserting an entitlement to injunctive relief based

on the Texas Constitution. Since state law claims do not implicate federal rights or federal

supremacy concerns, the *Ex parte Young* exception does not apply to state law claims brought

against state officials. *Pennhurst*, 465 U.S. at 106; *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir.

2011). Accordingly, Janek is entitled to the protection of the Eleventh Amendment from Plaintiffs'

claims based on violations of Texas law.

## C.    Failure to State a Claim

Janek also moves to dismiss Plaintiffs' claims against him for violation of federal

constitutional rights to due process and equal protection under § 1983, and for violations of Section 30(A) under § 1983, as well as Plaintiffs' Supremacy Clause claim.[13] Not surprisingly, Plaintiffs disagree.[14] The Court will address each claim in turn.

### i.        § 1983 Constitutional Claims

Janek first argues Plaintiffs' claims of violations of their right to due process under the United States Constitution fail at the outset because Plaintiffs have not identified any constitutionally protected property or liberty interests invoking due process protections.

"Procedural due process imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A property interest requires "more than a unilateral expectation" of a benefit. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, a person must "have a legitimate claim of entitlement to it." *Id*. at 577. Due process entitles individuals whose interests are at stake to "notice and an opportunity to be heard." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Plaintiffs first argue, and Janek concedes, a Medicaid recipient has a property interest in his or her benefits. However, the Court has already concluded the Doe Plaintiffs, Medicaid recipients,

---

[13] Janek also moves to dismiss Plaintiffs' claims under the Texas Constitution and for writ of mandamus. As the Court has already concluded Plaintiffs' state law claims against Janek are barred by the Eleventh Amendment, dismissal for failure to state a claim need not be addressed. Further, as the Court does not view Plaintiffs' claim for writ of mandamus as a free standing claim, bur rather an identification of the relief sought, there is no need to address dismissal for failure to state a claim.

[14] Plaintiffs also contend Janek's failure to move for dismissal of their claim under the APA is an implicit concession that the claim is not ripe for dismissal. However, as a close reading of Plaintiffs' pleadings makes clear, no APA claim has been asserted against Janek; the APA claim is against Sebelius. Janek's failure to move for dismissal of such a claim cannot be viewed as a concession of the claim's validity.

have not established standing to bring any claims in this action.

Plaintiffs also contend the grant of a Medicaid provider number constitutes a privilege in the form of a license which cannot be rendered meaningless without due process.[15] A professional license *may* constitute a property interest warranting due process protections. *See, e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1971) (once issued, a license or permit cannot be taken away by the state without due process); *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 225 (5th Cir. 2008) (state-issued license can create property interest cognizable under Due Process clause); *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977) ("Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process."). But not all licenses automatically afford their holder due process protections. *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 496 (5th Cir. 2011) (unpublished) (rejecting claims of property interest in police credentials); *Robertson v. Neal*, No. 7:01-CV-017-R, 2001 WL 1516741, at *4 (N.D. Tex. Nov. 27, 2001) ("I find that in Texas a police officer does not have a cognizable 'property right' with respect to a police officer's license as to which the due process clauses of the Fifth and Fourteenth Amendments apply."). Significantly, Plaintiffs here have provided no authority supporting their contention a Medicaid provider number is tantamount to a professional license. Accordingly, Plaintiffs have not shown any property interest affording them due process protection. Their claim of a due process violation thus fails.[16]

---

[15] Plaintiffs also argue the actions of the PBMs should be attributed to Janek and therefore constitute state action. Nothing in this argument, however, rebuts the need to show a property interest to establish an entitlement to due process.

[16] Janek has moved to dismiss Plaintiffs' due process claims on several other bases. These need not be addressed, based on the Court's conclusion Plaintiffs have failed to allege a property interest subject to the protections of due process.

Janek also moves to dismiss Plaintiffs' equal protection claim. Janek contends Plaintiffs do not even attempt to articulate the essential elements of an equal protection claim. Specifically, according to Janek, Plaintiffs have not shown they were intentionally treated differently from others similarly situated.

The Equal Protection Clause of the Fourteenth Amendment commands no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The basis of an equal protection claim is, thus, the requirement all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1989); *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001).

In their response, Plaintiffs boldly proclaim "[Janek] has knowingly denied equal protection to the plaintiff pharmacies because their ability to participate in the Medicaid program is now wholly regulated by an entity with a conflict of interest in that it is affiliated with competing pharmacies." Pl.'s Corr. Resp. [#40] at 12. No support is provided for the assertion the Development Project is "wholly regulated" by a entity with a conflict of interest. Rather, Plaintiffs' complaint simply alleges *one* of the PBMs suffers from a conflict of interest. Am. Compl. [#11] ¶ 41. More significantly, Plaintiffs have wholly failed to allege any actual differential treatment. At best, they have suggested the affiliation of one PBM with a competing pharmacy will necessarily harm them. This falls far short of satisfying the requirements of an equal protection claim. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir.1990) (equal protection claim based on general and vague allegations of differential treatment properly dismissed). Accordingly, Plaintiffs' equal protection claim is dismissed.

24

ii.     **Section 30(A) Claim**

Defendant Janek has also moved to dismiss Plaintiffs' claim of a violation of Section 30(A) asserted under 42 U.S.C. § 1983. Janek correctly points out the Fifth Circuit has clearly held Section 30(A) "does not confer individual private rights that are enforceable under § 1983." *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 667, 703 (5th Cir. 2007). Plaintiffs argue at great length the Fifth Circuit's decision failed to consider all of the appropriate language in the Medicaid Act, and thus was wrongly decided. Regardless of the accuracy or passion of Plaintiffs' argument, this Court is bound by Fifth Circuit precedent. Accordingly, Plaintiffs' claim of a violation of Section 30(A) asserted under § 1983 fails to state a cognizable claim and Janek is entitled to dismissal of that claim.

iii.    **Supremacy Clause**

Finally, Janek moves to dismiss Plaintiffs' Supremacy Clause claim. The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Thus, the clause "mandates that federal law overrides, i.e., preempts, any state regulation where there is an actual conflict between the two sets of legislation." *Hawkins*, 562 F.3d at 730. Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sanchez*, 403 F.3d at 336 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (internal quotation marks omitted)).

As an initial matter, the Court reiterates its concerns raised in the order denying Plaintiffs' motion for a temporary restraining order regarding the Supreme Court's recent decision in *Douglas*.

25

In *Douglas*, the Supreme Court seriously questioned "whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law," but ultimately declined to make a definitive ruling on the issue, instead remanding the case back to the Ninth Circuit for further proceedings in light of CMS's intervening approval of the challenged State statutes. *Douglas*, 132 S. Ct. at 1207, 1211.[17] The Court again declines to dismiss this action based on *Douglas*, and in light of current Fifth Circuit precedent. *See Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 334 (5th Cir. 2005) (rule recognizing implied right of action under Supremacy Clause to enjoin state or local regulation preempted by federal statutory or constitutional provision "is well-established"); *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Lewis v. Alexander*, 685 F.3d 325, 345–46 (3d. Cir. 2012) (concluding Supreme Court precedent dictates Supremacy Clause provides plaintiffs with independent basis for private right of action); *Koenning v. Suehs*, No. V-11-6, 2012 WL 4127956, at *12 (S.D. Tex. Sept. 18, 2012) (court "compelled to hold that the Supremacy Clause provides a private right of action here"); *Ariz. Hosp. & Healthcare Ass'n v. Betlach*, No. CV11-2348-PHX-DGC, 2012 WL 999066, at *11 (D. Ariz. Mar. 23, 2012) (assuming Supremacy Clause claim remains viable after decision in *Douglas* because current state of circuit law supports existence of claims, "[a]lthough *Douglas* provides ample reason to doubt the viability of such a claim"). Rather, as the Third Circuit noted,

---

[17] The dissenting justices in *Douglas* would have held no such cause of action exists. *Douglas*, 132 S. Ct. at 1215 (Roberts, J., dissenting).

the matter is ripe for addressing at a higher level. *See Lewis*, 685 F.3d at 346 ("Although the Supreme Court is free to revisit *Shaw* if it so desires, we are not. *Shaw* is binding precedent unless and until it is abrogated by the Supreme Court.").

Plaintiffs' Supremacy Clause claim rests on the contention Janek has ignored the mandatory terms of the Medicaid Act in failing to act and has abdicated his responsibility to ensure the Development Project complies with the terms of the Medicaid Act. Specifically, Plaintiffs contend: (1) HHSC exercised its authority to expand managed care purely for budgetary reasons; (2) Defendants did not modify the Vendor Drug Program and the rates therein, thus those rates must be applied; (3) HHSC and Janek ignored studies they conducted regarding estimated costs of providing pharmacy services; (4) HHSC did not consider the factors of Section 30(A) in effectively authorizing the MCOs and PBMs to set reimbursement rates for pharmacy services; and (5) the reimbursement rates under the Development Project are not reasonably related to provider costs and thus violate Section 30(A). *Id.* ¶ 78. Janek contends none of these arguments is sufficient to state a claim under the Supremacy Clause, but rather, at best, assert violations of state and federal law.

As to the first of Plaintiffs' arguments, Janek argues the idea the adoption of a state regulatory scheme purely for budgetary reasons is improper is limited to courts in the Ninth Circuit, and has no application in the Fifth Circuit. *See Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1499 n.3 (9th Cir.1997) ("It is not justifiable for the Department to reimburse providers substantially less than their costs for purely budgetary reasons."). The Court notes the notion is somewhat more widespread than Janek suggests. *See Ark. Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 531 (8th Cir. 1993) (rejecting "exclusively budgetary" justification for rate cuts to Medicaid providers); *AMISUB v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 800–01 (10th Cir.1989) (rejecting state Medicaid plan

resulting in 46% reduction in provider reimbursement, stating budgetary constraints may be considered, but "budgetary constraints alone can never be sufficient"). However, the Fifth Circuit does not appear to have adopted this line of reasoning, and this Court will not do so now. Moreover, even if the law in the Fifth Circuit embraced the position, Plaintiffs have failed to explain how the adoption of a Medicaid plan with the purpose of reducing costs creates an impossible conflict between state and federal law. As such, this contention cannot form the basis of a Supremacy Clause claim.

As to Plaintiffs' contention the Vendor Drug Program was not superseded or waived by implementation of the Development Project, this allegation also fails to state a cognizable Supremacy Clause claim. Janek maintains the Vendor Drug Program requirements are simply not applicable to the Development Project, which receives a specific "section 1115 waiver" excluding it from the Medicaid Act's typical state plan requirements. But, as Janek further correctly points out, the validity of the adoption of the Development Project need not be determined as this portion of Plaintiffs' allegations at most shows a failure to comply with federal law by failing to properly implement the Development Project, or a failure by HHSC to comply with its own laws and regulations under the Vendor Drug Program. What the allegations do not establish is a conflict between state and federal law, as is required to state a claim under the Supremacy Clause. Thus, Plaintiffs' allegation fails to state a claim under the Supremacy Clause.

Plaintiffs' final three bases for their Supremacy Clause claim all rest on the alleged failure of Janek to ensure the factors of Section 30(A) are being satisfied under the Development Project as to the reimbursement rates for pharmacy services. As set forth above, Section 30(A) requires "that payments are consistent with efficiency, economy and quality of care and are sufficient to enlist

enough providers so that care and services are available under the plan." 42 U.S.C.

§ 1396a(a)(30)(A). According to Plaintiffs, Janek:

> clearly interprets Senate Bill 7 *not* to require compliance with section 30(A). If Senate Bill 7 does not in fact require reasonable reimbursement as that term is used in section 30(A), then because section 30(A) clearly has not been waived, Senate Bill 7 is in direct conflict with section 30(A). That is a simple and direct supremacy clause claim.

Pl.'s Corr. Resp. [#40] at 15–16.

Plaintiffs' argument is flawed. Under their view, any state law or regulation which does not specifically require compliance with federal law is subject to a Supremacy Clause challenge. This is simply not the law. To bring a Supremacy Clause claim, Plaintiffs must identify a state law which *actually conflicts* with a federal law. *See Hawkins*, 562 F.3d at 730 (Supremacy Clause violation requires actual conflict between two sets of legislation). The suggestion Janek has acted contrary to federal law is insufficient. Such a standard would turn every failure by state officials to act in compliance with federal law into a violation of the Supremacy Clause.

Moreover, Plaintiffs have not, and indeed cannot, point to a state law or regulation which necessarily violates Section 30(A). As both parties have pointed out, both HHSC and CMS have disavowed any responsibility for setting reimbursement rates to pharmacy providers under a managed care model. Rather, those decisions are left to the MCOs and PBMs. Thus, the insufficient reimbursements Plaintiffs complain of are not mandated by the managed care model currently used by HHSC, but rather are the product of choices by the MCOs and PBMs, as well as the choice of Plaintiffs' member pharmacies to continue to provide goods and services to Medicaid recipients. Because those choices are not mandated by any state law, there can be no direct conflict between state and federal law, and thus no violation of the Supremacy Clause. *See id.* (claim HHSC's refusal

to provide adequate reimbursement rates for Medicaid services was in direct conflict with "Reasonable Promptness Provision of the Medicaid Act" failed to state Supremacy Clause violation because plaintiff failed to identify any state law or regulation which conflicted with federal law).

Put differently, there is no state law which conflicts with Section 30(A) by requiring, for example, payments *not* be "sufficient to enlist enough providers so that care and services are available under the plan." Effectively, Plaintiffs' complaint is an attack on the whole notion of a managed care model under Medicaid, based on the belief the inadequacies in such a model will inevitably fail to ensure an adequate reimbursement rate for providers of medical services. This is, at best, an allegation Texas's managed care model violates the Medicaid Act. Such an attack cannot be brought under the Supremacy Clause. Plaintiffs' Supremacy Clause claims are therefore dismissed.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants' Second Motion to Dismiss [#14] and Defendants' Corrected Second Motion to Dismiss [#15] are DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Defendant Janek's Motion to Dismiss Plaintiffs' First Amended Original Complaint [#29] is GRANTED;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment or, in the Alternative, for Temporary Injunction [#51] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that The Texas Association of Mexican American Chamber of Commerce and The League of United Latin American Citizens - Great Houston Area's Motion for Leave to File Amicus Brief [#53] is DISMISSED AS MOOT;

IT IS FINALLY ORDERED that Plaintiffs' claims against Defendant Janek are DISMISSED WITHOUT PREJUDICE. Plaintiffs shall have THIRTY (30) DAYS from entry of this order in which to file an amended complaint.

SIGNED this the 29th day of October 2012.

_____

SAM SPARKS
UNITED STATES DISTRICT JUDGE